# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2094 | **DATE** | 2/19/2004 |
| **CASE TITLE** | DAVIS, ET AL vs. CHICAGO, ET AL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  **Plaintiff's motion to compel (26-1) to compel is granted. Enter Memorandum Opinion and Order. Defendant's motion (27-1) to compel is denied without prejudice.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | FEB 2 4 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 38 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | | |
| | Copy to judge/magistrate judge. | | FEB 2 4 2004 | |
| DW | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FEB 2 4 2004

SHANI DAVIS, et al.,

    Plaintiffs,

v.

CITY OF CHICAGO, e. al.,

    Defendants.

No. 03 C 2094
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

**I. Background**

The present suit arises out of four allegedly unlawful, unrelated stops and searches conducted by Officer K. Meerbrey and Officers John Doe One through Four. Plaintiffs allege that these stops and searches violated their constitutional rights and are seeking declaratory, injunctive, and monetary relief from the officers involved, the then Superintendent of Police, and the City of Chicago. The searches included conducting pat downs, using flashlights to examine parts of the body covered by clothing, and searching the pockets and/or bags of detainees. During these stops and searches, no contraband was discovered.

The Plaintiffs are alleged to be solid U.S. citizens, one young man was a member of the United States Olympic Team in speed skating, another is a CTA bus driver, a third is a film-maker, and the fourth is the Director of the High School Civil Liberties Project of the American Civil Liberties Union of Illinois. Although none of these qualifications is necessary (an unemployed non-citizen with a long criminal record is entitled to be free from unconstitutional stops and searches), they are stated here to show that unconstitutional police actions affect not only the criminal element but also upstanding citizens. I infer from the emphasis on the

38

"upstandingness" of the Plaintiffs and from the papers before me that this case has been designed to effect a change in police practices, particularly stops and searches. Most of the attorneys who appear for Plaintiffs are associated with an organization devoted to the protection of constitutional liberties. Furthermore, the incidents are all very similar and are alleged to have occurred over a substantial period of time, which is important if one wishes to challenge a general policy and practice.

## II. The Issue

There is nothing legally wrong with test cases such as this one, yet the larger questions cannot be decided until the facts of the individual cases are proven. At this time, Plaintiffs' counsel seeks to discover the identity of the police officers who made the alleged stops. Plaintiffs have named one Defendant, Officer K. Meerbrey, but claim there might be as many as four others involved in the remaining three incidents.

To make these identifications, Plaintiffs propose that they look at photographs of every officer who was on duty during the time and at the place of the complained of stops and searches. Defendants do not object to the production of such photographs but argue that, pursuant to the reliable identification doctrine applied in criminal cases, they are entitled to minimal safeguards against misidentification.[1] Plaintiffs, on the other hand, believe they are entitled to production of the photographs without restriction.

---

[1] The City has standing to ask for such safeguards because it cannot be found liable without proof of misconduct of its individual officers. Accordingly, the City has a tangible interest in preventing misidentification of those officers.

## III. The Authority of This Court

Discovery is a right of each party that may be limited by courts, pursuant to Federal Rules of Civil Procedure 26-37, to prevent annoyance, embarrassment, oppression, undue burden, or expense. The presence of the opposing party and the court during the discovery process is the norm. For example, all interrogatories and documents are carefully reviewed by both parties (the requested material is prepared by one party and received by the other), all depositions are attended by both parties, and in the event of disputes, the parties may appeal to the court for assistance.

Plaintiffs are requesting the examination of the City's photographs. The form of such an examination they argue is not within the control of this court. However, Federal Rule of Civil Procedure 34 explicitly states that production of tangible items, such as photographs, may, at the request of either party, be compelled by the court. The Plaintiffs are confusing discovery, which must be done in accordance with the Federal Rules of Civil Procedure and under supervision of the court, with investigation, which attorneys are free to do on their own outside the realm of judicial procedures. *Auriemma v. Montgomery*, 860 F.2d 273, 278 (7th Cir. 1988). In this case, investigation would prove much more difficult than discovery as Plaintiffs are not likely to succeed in randomly identifying officers on the street or in getting information directly from officers themselves. It is probably because of these investigative difficulties that Plaintiffs are now (rightly) seeking the photographs through discovery, but they must remember that with discovery comes some degree of judicial control.

## IV. The Differences Between the Parties and Their Resolution

Plaintiffs could argue that defendants in civil cases have no legally cognizable right to the protection of procedures designed to reduce the risk of misidentification as there seems to be almost a complete absence of law on this issue.[2] There are two likely reasons for this lack of legal precedent. First, eyewitness identification is rarely a material issue in civil cases. Second, in the vast majority of cases, plaintiff's counsel has no tactical reason to fight over the issue because he has a vested interest in identifying the proper tortfeasor. A weak or demonstratively wrongful identification would be welcomed by defense counsel and could destroy or at least discredit the plaintiff's case.

So, Plaintiffs here do not challenge Defendants' right to a fair identification procedure. Instead, they challenge Defendants' proposed procedures as unnecessary.

There is one defense request to which there is no substantive objection. Plaintiffs have agreed, to the best of their ability, to provide a physical description of the unknown officers before examining the photographs. Therefore, I order this to be done without the need for a formal interrogatory. The description shall include the Plaintiffs' recollections, if any, of physical characteristics including (a) permanent characteristics of height, age, race, scars, etc. and

---

[2] After thorough review, I have found only two district court cases that address photographic identification of unnamed defendants. In both of those cases, the courts found that defendants were entitled to restrictions on viewing of the photographs. In *Matthews v. Charbonneau*, No. 78-C1679, 1980 U.S., Dist. LEXIS 12609 (D. Mass. July 30, 1980), the court found that civil defendants were entitled to the same protection as criminal defendants against misidentification. In *Santos v. Raymond*, No. 84-C8230, 1984 U.S. Dist. LEXIS 21223, (S.D.N.Y. Dec. 14, 1984), the court allowed the plaintiff access to the requested photographs on the condition that the photographs would be viewed by witnesses only in the presence of defense counsel.

(b) mutable characteristics of weight, hair color/style, and skin complexion.[3] Characteristics such as tone and timbre of voice, accents, manner of physical movement and so forth are not relevant to still photograph arrays and need not be included. However, the defendants can tender other and separate interrogatories to cover these matters.

Initially, Plaintiffs offered the following process: Defendants would assemble photographs of all male police officers on duty in the relevant districts at the relevant times, both sides would come together and shuffle the photographs, the photographs would be shown one at a time to Plaintiffs who would have the right to examine photographs more than once and to compare photographs side by side, the parties would then separate, and Plaintiffs' counsel would notify Defendant as to whether identifications had been made and whom had been identified.

Defendants, however, want greater precautions than those included in Plaintiffs' proposal. The Defendants insist that (A) an experienced law enforcement officer presides over the identification process, (B) defense counsel be present when Plaintiffs view the photographs, (C) the array include filler photographs of officers who were not assigned to the districts at the time in question, (D) identifications be made and stated during the identification process, (E) Plaintiffs state their degree of certainty for each identification, and (F) the identification procedures be done according to the procedural requirements of Illinois and Federal law.[4]

---

[3] The Plaintiffs are concerned that, upon receiving the descriptions, the City will decide on its own not to produce certain photographs because they are outside the ambit of the description. The City's determination would not be unilateral, and I do not understand the City to demand that it makes the selections without oversight.

[4] The City also wants the procedure to be conducted in a police setting. I think the police setting does not increase or diminish reliability. I do regard the objection to the police facility on the grounds that it is "intimidating" as a makeweight to cover the usual reason for objections of lawyers to do discovery at one place rather than another–the normal preference for the

### A. Defendants' Request For an Experienced Law Enforcement Expert to Preside Over the Identification Process

One of Defendants' primary requests is that a law enforcement agent, experienced in identification procedures, manage whatever process this court allows. Since few lawyers (especially those who specialize in civil practice) are experienced in managing photographic lineup procedures, I believe a neutral expert would be beneficial to this process. A suitable officer would be one who has the requisite expertise in identification procedures and who is not employed by the City.

The reason for having an experienced person administer the identification is demonstrated by Plaintiffs' suggestion that the photographs be shuffled and viewed one at a time. Studies have demonstrated that the order and sequence in which a witness views the photographs can affect the reliability of his or her identification. Random shuffling could result in suggestive photographic arrays in which certain officers might stand out. Moreover, it has been shown that sequential showings can increase errors in identification especially in cross-racial identifications with multiple perpetrators whose appearances may have changed over time.[5] Thus, it is apparent

---

convenience of one's own office. Plaintiffs themselves do not say they would be intimidated, and since they are willing to sue individual officers at the risk of making such officers unhappy, they are unlikely to be intimidated by going to the police facility where complaints against officers are investigated. Control over the possession of the photographs to prevent copying or distribution can be achieved without requiring the plaintiffs to come to a police facility. If we reach the point at which a procedure is going to occur, I will weigh the comparative costs of police facility against a lawyer's office and elect the least expensive alternative.

[5] *See* Steblay N. et al. (2001) *"Eyewitness Accuracy Rates in Sequential and Simultaneous Lineup Procedures: a Meta-Analytical Comparison,"* Law and Human Behavior vol. 25, 459-73; Turtle, Lindsay & Wells (2003), *Best Practice Recommendations for Eyewitness Evidence Procedures: New Ideas for the Oldest Way to Solve a Case,* (to appear in Canadian Journal of Police and Security Services, now at www.psychology.iastate.edu/faculty/gwells; Ebbesen and Flowe, *Simultaneous v. Sequential Lineups: What Do We Really Know?*,

6

that the order and manner of showing photographs can be handled in a variety of ways and is best managed by someone whose judgment is informed by experience.

### B. Defendants' Request that Defense Counsel be Present When Plaintiffs View the Photographs

Defendants insist that defense counsel be present at all times when photographs are shown to Plaintiffs. Originally, Plaintiffs had agreed to this but have since changed their minds. Instead of defense counsel, Plaintiffs now suggest the use of an independent witness, presumably one selected by agreement.[6] This "concession" on Plaintiffs' part is likely one born out of tactical necessity. If the reliability of identification procedures is questioned, absent an independent witness, Plaintiffs' lawyers would have to testify about the fairness and accuracy of the procedures. In other words, defense counsel in that situation may be entitled to call Plaintiffs' attorneys as witnesses in the midst of trial. Accordingly, I think Plaintiffs' willingness to have an independent witness stems from their understandable desire to avoid this dilemma.

### C. Defendants' Request for Inclusion of Filler Photographs in the Array

Plaintiffs strongly object to the Defendants' request for filler photographs to be placed in the array. Plaintiffs claim there is no need for fillers because the Plaintiffs' attorneys have no suspect in mind and are unable and unwilling to suggest to their clients who ought to be picked.

---

www.psy.uscd.edu/~eebbesen.

[6] Criminal law provides a formally accused person the right to have a lawyer who serves as a witness at the procedure and who may offer suggestions on the process. *Kirby v. Illinois*, 406 U.S. 682 (1972). Before formal charging, the procedure may be conducted without defense counsel who may later challenge only its suggestiveness in a motion to suppress. *Stovall v. Denno*, 388 U.S. 293 (1967). Here there is, in a sense, a formal charge–a complaint filed against Defendants, but the analogy to criminal case law does not hold up well because a Defendant in a civil case has no constitutional right to counsel.

7

On the other hand, Defendants argue that fillers are necessary to keep particular officers from standing out. To avoid such a problem with suggestiveness, I find it is necessary for the array of photographs to include a number of officers with the same general characteristics. For example, if Plaintiffs describe an officer as light skinned, overweight, and Hispanic and there is only one such officer of that description in the array, then fillers must be used to supplement the array with other officers who have similar physical characteristics.

D.    **Defendants' Request That Any Identifications Be Made and Stated During the Identification Process**

Plaintiffs are now opposed to disclosing whether identifications were made during the identification process. Presumably, Plaintiffs want to guard against any wrongful identification, such as an officer who has a cast iron alibi for the time and place in question. In simple terms, Plaintiffs' counsel wants to use the attorney-client privilege to conceal from the Defendants that their client made a statement, deliberately or by mistake, that may be materially untrue. This is, of course, a permissible use of the privilege, and it is not my place to comment on its social utility. *See Generally Radiant Burners, Inc. v. American Gas Asso.*, 320 F.2d 314, 319 (7th Cir. 1963).

There is no question that Plaintiffs have the right to discuss their identification with counsel in a privileged setting. However, this identification procedure is not such a setting. For a communication to be protected under the attorney-client privilege, it must be made in confidence. *Id.* Any statements made in the presence of a third party, such as the independent witness who will attend the photographic lineups, are not confidential and are not protected. In order to maintain the privilege, Plaintiffs would have to refrain from comment during the actual

identification procedure itself and reveal their identifications only after reaching a confidential setting.

Defendants would have me order Plaintiffs to make prompt identifications without allowing time for private discussion. The heart of Plaintiffs' objection to Defendants' request is that prompt, unprivileged identification is not necessary to insure fairness. To make this point, Plaintiffs emphasize the differences between civil and criminal procedures citing elements in civil procedure, absent in the criminal process, that offset the risk of erroneous identification.[7] Plaintiffs point out that Defendants will have the right to depose the Plaintiffs on the issue of identification, ask Plaintiffs to make a second identification, and investigate the circumstances of the identification.

The Defendants are unlikely be able to employ these safeguards to the extent Plaintiffs suggest. The practical effect of a deposition is somewhat overstated. If the initial identification is made only in the presence of Plaintiffs' lawyers and their staff, then what occurred is privileged and is not subject to inquiry by Defendants. If privilege applies, and Plaintiffs think it will, then Defendants would not be able to "probe Plaintiffs in excruciating detail" or even investigate the circumstances of the identification process. The difference between civil and criminal case safeguards is not so great. In a criminal case, a motion to suppress the identification can be filed before trial and the officers conducting the photographic array as well

---

[7]Another alternative would be to allow time for the Plaintiffs to see if the identity of the officers could be discovered in other ways. These cases do not have very long limitations periods, and alternative means of discovery, even where feasible, may prejudice the Plaintiff. In this case, I have used my equitable authority to toll the statute of limitations until the identification procedure issue has been resolved. Had I not done so, the limitations period would have lapsed.

9

as the witnesses could be questioned extensively. *United States v. Galati*, 230 F.3d 254, 259 (7th Cir. 2000). Absent waiver of privilege, the Defendants here will be in a far worse position to challenge the identification's reliability than a similarly situated criminal defendant. Thus, I will require that Plaintiffs make any identifications they are able to make during the administration of the identification process.

Although the Plaintiffs do not argue directly that forcing their clients to make an on-the-spot identification violates the attorney-client privilege, it is an argument that hangs on the periphery of this area and is one I should address.

Plaintiffs' counsel might like to invoke privilege because they are uncertain as to what their clients might say or do and would prefer not to reveal any such actions or statements without time to substantiate them. Certainly, a misidentification, i.e. picking a filler photograph, or a weak identification could damage not only that particular Plaintiff's credibility but could also damage the case as a whole. However, in other similar settings, privilege cannot be invoked to protect a client from answering difficult and dangerous questions. For example, if a client is asked a possibly damaging question during a deposition, his lawyer may not, on the basis of privilege, interrupt the proceedings before the question is answered. Absent a proper objection, the lawyer must live with the answers given by his client. Furthermore, if a plaintiff, who is being deposed, was asked to look at and identify a person shown in a photograph, he or she would have to answer that question then and there. In that situation, plaintiff's attorney would have no absolute right to insist that he and his client review the photograph in private before the client gave an answer.

### E. Defendants' Request that Plaintiffs State Their Degree of Certainty for Each Identification

Plaintiffs' objection to providing a level of confidence in the identification is much the same as their objection to prompt disclosure. Like prompt identification, Plaintiffs' levels of confidence bears on the reliability of the identification and should be made known to Defendants.

### F. Defendants' Request that the Criminal Procedures Required Under Illinois and Federal Law Be Followed

Finally, I turn to Defendants' request that state and federal procedures set forth in the United States Department of Justice Guidelines and Illinois law at 725 ILCS 5/107A are used to govern the procedures employed in the identification process. Plaintiffs object on the grounds that these are criminal procedures and are not binding here.[8] The procedures given in the Department of Justice publication "Eyewitness Evidence" offers rules to avoid suggestiveness in the array[9] and to govern witness instructions.[10] The Illinois statute also provides useful

---

[8] Were they legally binding, I would not be writing this opinion. I would simply be ordering their use.

[9] Those relevant here are:
(1) Group photos by format, i.e., color with color, digital with digital, etc.
(2) Select photos that are uniform with regard to general physical characteristics of race, sex, age, etc.
(3) Use reasonably contemporary photographs.
(4) Use only one photo of each individual in the array.

[10] Those are:
(1) Instruct each witness without other persons present.
(2) Describe the array only as a "collection of photographs."
(3) Instruct the witness that the person who committed the act may or may not have a photograph in the array.
(4) Consider telling the witness to think back to the event and his frame of mind at the time.
(5) Instruct the witness to select a photograph if he can and to state how he knows the person.
(6) Assure the witness that regardless of whether he makes an identification, the investigation [in this case, investigation, discovery and the lawsuit] will continue on.
(7) Instruct the witness that he will be asked to state in his words how certain he is of any identification..

guidelines for administrations of photographic arrays.[11] Both the federal and state findings on identification procedures are informed by experience and are relevant here. I will leave their exact application to the independent law enforcement expert appointed to manage this process.

## V. The Order

I will order production of the photographs on the condition that the examination of the photographic array be conducted under the supervision of an independent, neutral person trained in the proper methods of eyewitness identification–the presiding officer. Composition of the array shall be determined by the presiding officer who will hear the suggestions and objections, if any, of Plaintiffs' and Defendants' counsel. The manner of examination shall be determined by the presiding officer. Upon viewing of the array, each Plaintiff shall announce whether he is able to make an identification and shall be asked to state his level of confidence in that identification. Procedural decisions made by the presiding officer may be presented to the court for review. Selection of the presiding officer will be made by the court if the parties are unable to agree. Refusal of a plaintiff to make an identification during the identification procedure shall be construed in all future proceedings to be an inability to make an identification. Refusal to state a level of confidence in an identification shall be admissible to impeach an identification. Recordation of the procedure is urged upon the parties. Recordation of the statements of Plaintiffs at the procedure is required. Electronic recordation is permissible.

---

[11] (b) Each eyewitness who views a....photo spread shall sign a form containing the following information:
    (1) The suspect might not be in the ....photo spread and the eyewitness is not obligated to make an identification.
    (2)The eyewitness should not assume that the person administering the...photo spread knows which person is the suspect in the case.
(c) Suspects in a....photo spread should not appear to be substantially different from "fillers" or "distracters" in the...photo spread, based on the eyewitness' previous description of the perpetrator, or based on other factors that would draw attention to the suspect."

12

The Plaintiffs, of course, need not accept these conditions. I do not require that the Plaintiffs make identifications from a photographic array before proceeding with the case. The Plaintiffs are free to abandon their request for the City's photographs. In my view it would, however, be best for both Plaintiffs and Defendant if identifications are made in a fairly conducted identification procedure.

Plaintiffs' Motion to Compel Photographs is GRANTED to the extent consistent with this opinion.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: 19 February 2003